**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)**

LEN STOLER INC.,
11275 Reisterstown Rd.
Owings Mills, Maryland 21117

        Plaintiff,

      v.

HYUNDAI MOTOR AMERICA CORPORATION,
10550 Talbert Ave.
Fountain Valley, California 92708

GENESIS MOTOR AMERICA LLC,
10550 Talbert Ave.
Fountain Valley, California 92708

PETER PRATHER,
10550 Talbert Ave.
Fountain Valley, California 92708

and MICHAEL DEPAUL,
10550 Talbert Ave.
Fountain Valley, California 92708

        Defendants.

Civil Action No.

**COMPLAINT**

Plaintiff Len Stoler Inc., by and through its undersigned counsel, alleges as follows:

### <u>NATURE OF THE ACTION</u>

1.    Plaintiff is a successful Hyundai and Genesis motor vehicle dealer in Owings Mills, Maryland.

1

2.     Defendant Hyundai Motor America Corporation's ("Hyundai") and Defendant Genesis Motor America LLC's ("Genesis" and together with Hyundai, the "Hyundai Defendants") have imposed illegal sales performance standards and unlawfully charged back incentive monies owed to Plaintiff, all in violation of the Maryland Transportation Code.

3.     With respect to the unlawful chargeback of incentives, the Hyundai Defendants, together with Defendants Peter Prather ("Prather") and Michael DePaul ("DePaul") induced Plaintiff into selling motor vehicles to an independent affiliate with the expectation that such sales qualified for wholesale price discounts (in the form of per-vehicle incentive payments) under the Hyundai Defendants' Sales Reporting Rules and Regulations ("Sales Rules"), only to improperly charge those incentives back.

4.     The Hyundai Defendants have also publicly admitted that they withhold discretionary allocation to retaliate against dealers they do not consider to be a "good partner" to Hyundai.

5.     The Hyundai Defendants do so to coerce the dealers to fall in line and force them to comply with their demands, including unlawful and unreasonable facility and exclusivity requirements.

6.     Plaintiff seeks: a) a determination under Md. Transp. Code § 15-207(e)(3)(iii) that Defendants' performance standards are unfair and unreasonable; b) damages resulting from Defendants' unlawful performance standards; c) damages resulting from Defendants' unlawful coercion by withholding per-vehicle discounts and

2

inventory allocation; d) damages from Defendants' unlawful incentive chargeback; and e) any further relief this Court may deem just and proper.

## PARTIES

7.    Plaintiff is a corporation duly organized and existing under the laws of Maryland, with its principal place of business at 11275 Reisterstown Rd., Owings Mills, MD 21117 ("Dealership Location"). Plaintiff is also a "Dealer" under Md. Transp. Code § 15-101(c).

8.    Defendant Hyundai is a corporation duly organized under the laws of California, has its principal place of business at 10550 Talbert Ave., Fountain Valley, CA 92708, and is authorized to do business in the state of Maryland. Hyundai is a "Distributor" and "Manufacturer" under Md. Transp. Code §§15-201(b) and (e).

9.    Defendant Genesis is a limited liability company duly organized under the laws of California, has its principal place of business at 10550 Talbert Ave., Fountain Valley, CA 92708, and is authorized to do business in the state of Maryland. Genesis is a "Distributor" under Md. Transp. Code § 15-201(b).

10.    On information and belief, Defendant Prather is the Regional District Manager, Sales for Defendant Hyundai who travels often to the State of Maryland as part of his job responsibilities with Hyundai and conducts business in Maryland on its behalf. Prather's activities in the State of Maryland relate to the claims in this action.

11.    Defendant Prather is a citizen of the Commonwealth of Virginia.

12.    On information and belief, Defendant DePaul is the Regional General Manager, Mid-Atlantic for Defendant Genesis and travels often to the State of Maryland

as part of his job responsibilities with Genesis and conduct business in Maryland on its behalf. DePaul's activities in the State of Maryland relate to the claims in this action.

13.     Defendant DePaul is a citizen of the Commonwealth of Virginia.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 because all of the parties to this action are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15.     This Court has jurisdiction over Plaintiff's statutory claims under Md. Transp. Code § 15-213, which provides that "if a person suffers financial injury or other damage as a result of this subtitle by any other person, whether or not that other person has been found guilty of a criminal violation, the injured person may recover damages and reasonable attorneys' fees in any court of competent jurisdiction."

16.     In addition, Md. Transp. Code § 15-207(e)(3)(ii) authorizes this Court "to determine whether…the application of the performance standard, sales objective, or program is unfair or unreasonable under this paragraph."

## THE MARYLAND DEALER ACT

17.     Subtitle 2 of Title 15 of the Md. Transp. Code ("Maryland Dealer Act") regulates the business relationship between manufacturers and distributors like Hyundai and Genesis and their dealers like Plaintiff.

18.     The Maryland Dealer Act proscribes certain conduct that the Maryland Legislature has determined is harmful to the public, including to Maryland motor vehicle dealers.

4

19.     The Maryland Dealer Act regulates, among other things, performance standards, wholesale price discounts, incentives, and chargebacks.

20.     Maryland Dealer Act § 15-207(e) regulates performance standards set by manufacturers and distributors.

21.     Under Maryland Dealer Act § 15-207(e)(2), it is unlawful for a manufacturer or distributor to "require or coerce a dealer to adhere to performance standards that are not applied uniformly to other similarly situated dealers."

22.     Under Maryland Dealer Act § 15-207(e)(3)(i), a manufacturer or distributor may not impose a performance standard "that may have a material effect on a dealer, including the dealer's right to a benefit or payment under any incentive or reimbursement program, and the application of the standard, sales objective" unless such standard is:

    a.  fair, reasonable, and equitable;
    b.  based on accurate information; and
    c.  includes consideration of the demographic characteristics and consumer preferences of the population in the dealer's assigned market area, including:
        i.   Car and truck preferences of consumers; and
        ii.  Geographic characteristics, such as natural boundaries, road conditions, and terrain, that affect car and truck shopping patterns.

23.     Under Maryland Dealer Act § 15-207(e)(3)(ii):

A dealer that claims that the application of a performance standard, sales objective, or program for measuring dealership performance is unfair or unreasonable due to the manufacturer, distributor, or factory branch failing to reasonably consider demographic characteristics of the population in the dealer's assigned market area, including car and truck preferences of consumers, or due to the geographic characteristics, such as natural boundaries, road conditions, and terrain, that affect car and truck shopping patterns in the dealer's assigned marketing area,

5

may file a claim in a court of competent jurisdiction to determine whether the design of the assigned market area or the application of the performance standard, sales objective, or program is unfair or unreasonable.

24. The Maryland Dealer Act also regulates incentives and manufacturer audits and "chargebacks" of incentives.

25. Maryland Dealer Act § 15-212.1(c)(1) imposes a six-month cap beginning from the date of the incentive claim on audits and chargebacks, and limits chargebacks to claims that the manufacturer can show are "false or unsubstantiated."

26. The Maryland Dealer Act also imposes a statutory good-faith requirement on all manufacturers and distributors.

27. Maryland Dealer Act § 15-206.1 defines "good faith" as "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade."

28. Maryland Dealer Act § 15-206.1(b) requires manufacturers and distributors to exercise good faith: "(1) In acting or purporting to act under the terms, provisions, or conditions of any franchise agreement; or (2) In any transaction or conduct governed by this subtitle."

29. Maryland Dealer Act § 15-207(a) includes the following definitions for "coerce" and "require:"

(a)(1) In this section the following words have the meanings indicated.
(2)(i) "Coerce" means to compel or attempt to compel by threat of harm, breach of contract, or otherwise adverse action or consequences, including the loss of any incentive or other benefit made available to other dealers of the same line make in the State.
(2)(ii) "Coerce" includes to act in a manner that violates § 15-206.1 of this subtitle.
(2)(iii) "Coerce" does  not include to argue, urge, recommend or persuade.
(3) "Require" means to impose upon a dealer a provision not required by law or previously agreed to by a dealer in a franchise agreement, excluding business decisions made to comply with the requirements of this title by a manufacturer, distributor, or factory

branch which are uniformly applied to all Maryland dealers in new vehicles of the manufacturer, distributor, or factory branch.

30.     Under Maryland Dealer Act § 15-207(b), a manufacturer or distributor "whether directly or through an agent, employee, affiliate, or representative, may not coerce any dealer to make any agreement with the manufacturer, distributor, or factory branch or their agent, employee, affiliate or representative."

31.     Under Maryland Dealer Act § 15-207(d), a manufacturer or distributor, "whether directly or through an agent, employee, affiliate, or representative, may not require or coerce a dealer, by franchise agreement or otherwise, or as a condition to the renewal or continuation of a franchise agreement, to: (1) Exclude from the use of a dealer's facilities a dealership for which the dealer has a franchise agreement to utilize the facilities; or (2) Materially change the dealer's facilities or method of conducting business if the change would impose substantial financial hardship on the business of the dealer."

32.     Under Maryland Dealer Act § 15-207(h)(1)(i), a manufacturer must offer all dealers "any consumer rebates, dealer incentives, price or interest rate reductions, or finance terms." If the manufacturer denies the benefit in (h)(1)(i) based on a dealer's failure to comply with a performance standard, then the burden is on the manufacturer to prove the performance standard complies with the provisions of (h).

33.     Under Maryland Dealer Act § 15-207(h)(2), a manufacturer may not require a dealer to alter or replace an existing facility or deny, or threaten to deny, any benefit generally available to all dealers for a dealer's failure to alter or replace an existing dealership facility.

34.     Under Maryland Dealer Act § 15-207(h)(3), a manufacturer may not reduce the price of a motor vehicle charged to a dealer in exchange for the dealer's agreement to maintain an exclusive sales or service facility, build or alter a sales or service facility, or participate in a floor plan or other financing arrangement.

35.     Maryland Dealer Act § 15-207(i) prohibits manufacturers from offering "rebates, cash incentives, or other promotional items for the sale of a vehicle" based on meeting an unreasonable performance standard.

36.     Under Maryland Dealer Act § 15-208(a), a "manufacturer may not refuse to deliver new motor vehicles, new two-stage vehicles, or truck component parts, as the case may be, to a licensed dealer or distributor, in reasonable quantities and within a reasonable time after receipt of a written order, if: (1) The manufacturer specifically advertises that these vehicles or truck component parts are available for immediate delivery; and (2) The dealer or distributor has a franchise or other contract with the manufacturer for the sale of these vehicles or truck component parts to the public."

37.     Under Maryland Dealer Act § 15-208(e), "[if] a dealer has a franchise or other contract with a manufacturer, distributor, or factory branch for the sale of vehicles or truck compartment parts of a specific line or make, the manufacturer, distributor, or factory branch shall allow the dealer to: (1) purchase the vehicles or truck component parts at the same price and on the same terms as all other dealers with a franchise or other contract for the sale of vehicles or truck component parts of the same line make; and (2) Receive the same right to incentive payments that is given to all other dealers with a franchise or other contract for the sale of vehicles or truck component parts of the same line or make.

38.     Finally, Maryland Dealer Act § 15-213 provides that a person injured by a violation of the Maryland Dealer Act may recover damages and reasonable attorneys' fees.

## GENERAL ALLEGATIONS

### A.     Dealer Background and the Dealership Agreements

39.     Plaintiff and the Hyundai Defendants are parties to dealer agreements authorizing Plaintiff to sell and service Hyundai and Genesis motor vehicles from the Dealership Location.

40.     Plaintiff has been a franchised Hyundai dealer since the spring of 2000 and a franchised Genesis dealer since the spring of 2019.

41.     When Genesis and Plaintiff entered into a dealer agreement, the Hyundai Defendants authorized Plaintiff to operate Hyundai and Genesis dealerships under one roof.

42.     Prior to 2015, Genesis was a model under the Hyundai brand and not its own independent brand of vehicles. In 2015, Hyundai spun off Genesis into its own brand and by 2017, the first vehicle under the Genesis brand was released.

43.     Plaintiff has operated consolidated Hyundai and Genesis dealerships from the Dealership Location since 2019.

44.     The Dealership Location is well suited to serve Plaintiff's customers in terms of vehicle sales, service, and parts operations.

### B.     Hyundai Defendants' Unfair Sales Efficiency Metric

45.     The Hyundai Defendants use an unreasonable and unfair performance standard called "sales efficiency" to evaluate Plaintiff's sales performance.

46.     To calculate sales efficiency, the Hyundai Defendants first assign each dealer a geographic territory called a Primary Market Area ("PMA").

47.     PMAs consist of census tracts defined by the U.S. Census Bureau. Census tracts are typically assigned to the closest dealer, with certain exceptions to account for road networks and natural barriers (such as rivers and lakes).

48.     Whenever a new motor vehicle is bought or leased, that vehicle is registered with the state at the customer's address. This registration data is compiled by census tract and used by manufacturers and distributors like the Hyundai Defendants for various purposes, including measuring sales performance.

49.     The Hyundai Defendants also divide the universe of motor vehicles into individual vehicle class segments (*e.g.*, mid-sized sedans, small SUVs, and so on), and luxury and non-luxury brands (BMW, Mercedes, and Audi on one hand and Hyundai, Honda, Ford, Toyota, and so forth on the other).

50.     Using this registration and segmentation data, the Hyundai Defendants calculate "sales efficiency." Sales efficiency is a fraction, expressed as a percentage, where the numerator is all of a dealer's retail sales, wherever made, and the denominator is the dealer's "expected" sales – as dictated according to the Hyundai Defendants' unfair, unreasonable and inequitable criteria and assumptions:

$$\text{Sales efficiency} = \frac{\textbf{Actual Sales}}{\textbf{``Expected Sales''}} \times 100$$

10

51.    "Expected Sales", the sales efficiency denominator, is calculated by applying the Hyundai Defendants' respective statewide market share, in each vehicle segment, to all of the competitive retail motor vehicle registrations in the dealer's PMA:

**"Expected" Sales = Hyundai's Statewide Market Share in   x   Segment Registrations in**

**Segment                               PMA**

**(repeated for each vehicle segment in which Hyundai and Genesis compete)**

52.    Sales efficiency is unfair, unreasonable, inequitable, not based on accurate information, and does not consider all demographic characteristics and consumer preferences of the population in the dealer's PMA. While sales efficiency purports to adjust for the individual consumer preferences of vehicle type (small cars vs. large SUVs, and so on), it does not, for example, consider whether there is a brand preference within a given area that the dealer has to overcome.

53.    Moreover, the definitions, assumptions, criteria, and targets that undergird the sales efficiency metric compare disparate dealers in an unfair, unreasonable, and inequitable manner. Dealers across the state face different markets, clienteles, and local challenges. The sales efficiency metric ignores these local market differences.

54.    A 100% sales efficiency score is merely an average, and at any given time about half of all Hyundai and Genesis dealers may fail to meet their objective and may be subject to adverse action by Hyundai and Genesis, including, but not limited to, threats of franchise termination for "unsatisfactory" sales efficiency.

**C.    Hyundai's Unlawful and Unfair DPB 4.0 Program**

55.    In addition to using sales efficiency as a measure of sales performance, Hyundai also uses sales efficiency to set objectives under its Dealer Performance Bonus

("DPB 4.0") program. DPB 4.0 requires Hyundai dealers to meet sales volume objectives and sales efficiency targets in order to receive payments in the form of per-vehicle wholesale price discounts.

56.     On information and belief, Hyundai sets volume objectives by applying arbitrary projected sales increases to a baseline figure of either historical sales or expected sales using the sales efficiency formula described above. As with sales efficiency, the sales volume objectives do not account for all demographic characteristics and consumer preferences of the population in a dealer's PMA, as required by Maryland Transportation Code § 15-207(e)(3).

57.     Under the DPB 4.0, Hyundai provides wholesale price discounts equal to between 0% and 3% of manufacturer's suggested retail price ("MSRP") of each new vehicle the dealer sells, with the amount dependent on the extent to which the dealer meets both sales volume objectives and sales efficiency objectives. The grid used by Hyundai to determine the DPB 4.0 incentive discount is below:

| DPB 4.0 | | | | |
|---|---|---|---|---|
| Objective Attainment | Sales Efficiency | | | |
| | < 100% | 100-149% | 150-199% | 200%+ |
| 0%-99% | 0.0% | 1.5% | 2.25% | 2.5% |
| 100%-109% | 0.5% | 2.0% | 2.5% | 2.75% |
| 110%-119% | 1.0% | 2.25% | 2.75% | 3.0% |
| 120%+ | 3.0% | 3.0% | 3.0% | 3.0% |

58.     Hyundai provides increasing wholesale price discounts to dealers under DPB 4.0 for meeting performance standards that are unreasonable and fail to consider all existing circumstances.

59.     Through DPB 4.0, Hyundai established and implemented sales performance criteria for Plaintiff that are unfair, unreasonable, inequitable, based on inaccurate information, and do not account for all demographic characteristics and consumer preferences of the population in the dealer's PMA as explained in Maryland Transportation Code § 15-207(e)(3).

60.     For example, DPB 4.0's sales volume and sales efficiency metrics both ignore, among other material factors, that different dealers face different demographics, different consumer preferences beyond segment popularity, brand popularity, different lease penetration rates, different levels of competition, and different marketing budgets of competing line-makes.

61.     Whether as standalone performance metrics or as components of DPB 4.0, Hyundai's sales volume and sales efficiency metrics are unfair, unreasonable,  arbitrary, and do not fairly represent the realistic sales opportunity available to Plaintiff.

**D.     Genesis's Unlawful and Unfair RPB and Leadership Bonus Programs**

62.     Like Hyundai, Genesis offers wholesale price discounts conditioned on the dealer achieving arbitrary and unreasonable sales objectives.

63.     Known as the Retailer Performance Bonus ("RPB"), Genesis pays a dealer a wholesale price discount equal to 1.5% of the MSRP of each vehicle the dealer sells.

64.     RPB is based on unreasonable and arbitrary sales volume objectives that do not take into account all demographic characteristics and consumer preferences of the population in the dealer's PMA.

65.     On information and belief, Genesis sets volume objectives by applying arbitrary projected sales increases to a baseline figure of either historical sales or expected sales using the sales efficiency formula described above. The sales volume objectives do not account for all demographic characteristics and consumer preferences of the population in a dealer's PMA as required by Maryland Transportation Code § 15-207(e)(3).

66.     Genesis does not adjust RPB for any of the factors required under the Maryland Dealer Act and is therefore an unlawful and arbitrary performance standard.

67.     In addition to RPB, Genesis also ties an additional incentive discount equal to 4% of MSRP to a "Leadership Bonus" that, among other things, requires dealer to meet its RPB objective. In effect, the incorporation of RPB into the Leadership Bonus renders the Leadership Bonus unlawful.

**E.     Plaintiff's Qualification for Wholesale Price Discounts and Sales Incentives**

68.     From time to time the Hyundai Defendants offer certain benefits and incentives on vehicles sold by dealers like Plaintiff.

69.     These incentives and benefits include wholesale price discounts, like the DPB 4.0 and RPB discussed above, but also take many other forms, including special finance interest rates, special lease deals, or rebates.

70.     To qualify for these particular incentives and benefits, a dealer's motor vehicle sales must meet the Hyundai Defendants' definition of a "Retail Sale."

71.     The Sales Rules define a Retail Sale of a vehicle as follows:

　　　　a.   It meets all the elements of a valid sale;

14

      b.  It is made to an independent third party (consumer);

      c.  The vehicle is delivered to an independent commercial customer;

      d.  The vehicle is titled with the state in the name of the independent third party consumer and all applicable taxes has been paid. The title of the vehicle must pass to the consumer or his/her financing company;

      e.  The retail sales agreement or buyer's contract does not contain any guaranteed buy-back with a daily/mileage depreciation provision.

72.    At all relevant times, Plaintiff's motor vehicle sales complied with Hyundai Defendants' requirements for a Retail Sale.

**F.    Prather and DePaul Encouraged and Induced Plaintiff to Make Sales to Kingsley & Co.**

73.    Prather and DePaul were Regional District Sales Managers for Plaintiff's Hyundai and Genesis franchises, respectively.

74.    For several years, Plaintiff sold Hyundai and Genesis motor vehicles to an affiliate, Kingsley & Co., which is an independent commercial customer, as that term is used in the Sales Rules.

75.    Prather and DePaul knew that Plaintiff sold Hyundai and Genesis motor vehicles to Kingsley & Co. for several years and knew that Kingsley & Co. was affiliated with Plaintiff.

76.    At no time did Prather or DePaul notify Plaintiff that vehicles reported as sold to Kingsley & Co. may be considered "invalid sales" and ineligible for retail sales incentives.

77.    On the contrary, both Prather and DePaul encouraged Plaintiff to make sales to Kingsley & Co. in order to hit sales volume objectives and receive eligible retail sales incentives.

78.     Prather and DePaul's endorsement of Plaintiff's motor vehicle sales to Kingsley & Co. over several years served as approval of the transactions as "Retail Sales" under the Sales Rules.

79.     Relying on Prather and DePaul approving Plaintiff's motor vehicle sales to Kingsley & Co., Plaintiff understood the reporting of vehicles sold to commercial customers as a standard practice within the retail business of any Hyundai or Genesis franchise across the United States.

## G.   The Audit Letters, Plaintiff's Appeal, and Hyundai's and Genesis's Rejection

80.     Hyundai sent a letter dated December 15, 2020 informing Plaintiff that it had conducted an audit of sales incentives and alleged that certain sales by Plaintiff were ineligible for retail incentives ("Hyundai Audit Letter").

81.     The Hyundai Audit Letter also noted that Hyundai intended to penalize Plaintiff with over $240,000 in chargebacks for sales that purportedly did not qualify as retail sales under the Sales Rules.

82.     The crux of Hyundai's proposed chargebacks related to Plaintiff's sale of Hyundai motor vehicles to Kingsley & Co.

83.     On or about January 12, 2021, Plaintiff notified Hyundai that it was appealing the Hyundai Audit Letter ("Hyundai Appeal Letter").

84.     In the Hyundai Appeal Letter, Plaintiff confirmed that Kingsley & Co. was a commercial customer, independent of Plaintiff, and pointed out that Hyundai, through its agent, Prather, had approved of, and encouraged, Plaintiff to make Hyundai sales to Kingsley & Co.

16

85.     Plaintiff also requested that any portion of Hyundai's proposed chargeback that related to motor vehicle sales to Kingsley & Co. be reversed and the chargeback amount be recalculated.

86.     Despite the Hyundai Appeal Letter, Hyundai notified Plaintiff on or about February 2, 2021 that its final decision was to impose chargebacks of $208,942 against Plaintiff for sales that did not meet the definition of a "Retail Sale" under the Sales Rules.

87.     Genesis sent a letter dated December 14, 2020 informing Plaintiff that it had audited sales incentive payments made to Plaintiff. ("Genesis Audit Letter" and with the Hyundai Audit Letter the "Audit Letters"). Like Hyundai, Genesis alleged that certain sales made by Plaintiff did not qualify as "Retail Sales" under the Sales Rules.

88.     The Genesis Audit Letter stated that Genesis intended to penalize Plaintiff with over $19,000 in chargebacks for sales that were allegedly not retail sales.

89.     Like Hyundai, Genesis alleged that Plaintiff's sales to Kingsley & Co. did not qualify as "Retail Sales" under the Sales Rules.

90.     By letter dated January 12, 2021, Plaintiff notified Genesis that it was appealing the Genesis Audit Letter ("Genesis Appeal Letter").

91.     In the Genesis Appeal Letter, Plaintiff confirmed that Kingsley & Co. was a commercial customer independent of Plaintiff, and  pointed out that Genesis, through its agent and sales representative, DePaul, had approved of, and even encouraged Plaintiff to continue to make sales to Kingsley & Co. over the audit period.

92.     Plaintiff also requested that any portion of Genesis's proposed chargeback that related to motor vehicle sales to Kingsley & Co. be reversed and the chargeback amount be recalculated.

93.     Despite the Genesis Appeal Letter, Genesis notified Plaintiff on or about February 2, 2021 that its final decision was to impose chargebacks of $19,559.30 against Plaintiff for the sales made to Kingsley & Co. that purportedly were not "Retail Sales" under the Sales Rules.

**H.   Hyundai Defendants' Coercive Acts against Plaintiff and Refusal to Provide Inventory.**

94.     In addition to the discriminatory wholesale price discounts referenced above, the Hyundai Defendants condition wholesale price discounts in the form of per-vehicle incentive payments based on whether Plaintiff satisfies certain facility and exclusivity requirements.

95.     In or about January 2020, Hyundai announced the Accelerate Performance Bonus Program ("Accelerate Program"), which unlawfully conditions a majority of dealers' gross margin on whether a dealer complies with unilaterally set facility-related criteria.

96.     More specifically, the GDSI 2.0 component of the Accelerate Program provides a per-vehicle wholesale price discount to dealers that comply with its facility requirements, calculated as a percentage of MSRP:

| | | | |
|---|---|---|---|
| GDSI 2.0 Facility Program – Begin Construction | n/a | 1.0% * | Retail Sales/ Monthly Parts Statement |
| GDSI 2.0 Facility Program – Complete Construction | n/a | 1.0% * | Retail Sales/ Monthly Parts Statement |
| GDSI 2.0 Facility Program – Exclusivity | n/a | 1.0% * | Retail Sales/ Monthly Parts Statement |

18

97.     Among the conditions tied to the wholesale price discount, a dealer must construct stand-alone Hyundai and Genesis facilities even if the dealer is authorized to sell and service Hyundai and Genesis vehicles from one location.

98.     Like the GDSI 2.0 component of the Accelerate Program, Genesis's "Keystone Program," provides a per-vehicle wholesale price discount to dealers that comply with its facility requirements, calculated as a percentage of MSRP:

| EXCLUSIVITY | | | |
|---|---|---|---|
| FULL EXCLUSIVE | 4.0% | | |
| ADAPTIVE EXCLUSIVE | | 2.5% | |
| GENESIS SIGNATURE RETAILER | | | |
| FULL EXCLUSIVE | 4.5% | | |
| ADAPTIVE EXCLUSIVE | | 2.5% | |

99.     Currently Plaintiff operates its Hyundai and Genesis dealerships from one location that is neither GDSI 2.0 nor Keystone compliant, which its current franchise agreements with the Hyundai Defendants permit it to do.  As a result, Plaintiff does not receive wholesale price discounts related to facility and exclusivity requirements under either Accelerate or Keystone.

100.     Besides being unlawful under Maryland law, these exclusivity requirements are unreasonable and arbitrary.

101.     For example, if a dealer has two separate showrooms for Hyundai and a different brand, with separate entrances and staff, the Hyundai Defendants do not consider the dealer to be "exclusive" if the showrooms share a common wall.

102.    The dealer in that scenario would have to demolish one of the showrooms and build an entirely new facility three feet away from the Hyundai showroom to be considered "exclusive."

103.    The Hyundai Defendants also unlawfully withhold vehicle inventory to coerce dealers like Plaintiff into providing exclusive Genesis and Hyundai dealerships that comply with the Accelerate Program and Keystone Program.

104.    The Hyundai Defendants allocate a portion of the vehicles they provide to dealers utilizing a "formulaic" allocation system based on a percentage of vehicles sold (known as "turn and earn") or "balanced days' supply," which calculates the number of days to sell the dealer's current new vehicle inventory according to the dealer's current rate of retail sales.

105.    In addition to the formulaic allocation system, the Hyundai Defendants allocate a portion of vehicles on a "discretionary" basis to dealers considered to be "good partners."

106.    The Hyundai Defendants claim that they have the right to allocate vehicles on their discretion based on whether the dealer has participate in programs such as advertising associates, invested in the brands, including facilities, and whether the dealer is involved in litigation.

107.    Withholding discretionary inventory harms Plaintiff in multiple ways. Besides losing out on potential sales, Plaintiff earns less inventory under the formulaic allocation system.

108.    The Hyundai Defendants utilize a process called "pipeline protection" on discretionary allocation.

109.    Under pipeline protection, the Hyundai Dealers exclude vehicles allocated through discretionary allocation from the formula used to calculate the dealers formulaic allocation.

110.    Dealers who are given discretionary allocation therefore get the benefit of higher sales compared against an artificially low availability. These "good partners" therefore earn more vehicle though the formulaic allocation system than they would otherwise earn, and more vehicles than disfavored dealers like Plaintiff earn.

111.    The Hyundai Defendants have systematically withheld discretionary inventory from Plaintiff since commencing this action, and have made it clear through their actions and communications that they will not provide discretionary allocation until Plaintiff meets their unlawful facility and exclusivity requirements.

112.    The Hyundai Defendants' actions have resulted in lower sales and lower formulaic allocation for Plaintiff.

**FIRST CLAIM FOR RELIEF**
**(Violation of Md. Transp. Code § 15-207(e)**
**against the Hyundai Defendants – Sales Efficiency)**

113.    Plaintiff incorporates paragraphs 1 to 112 by reference as though fully set forth herein.

114.    Under Maryland Dealer Act § 15-207(e)(3), manufacturers and distributors are prohibited from establishing, implementing, or enforcing criteria for measuring "an assigned market area or a performance standard, sales objective, or program for measuring

21

dealership performance that may have a material effect on a dealer, including the dealer's right to a benefit or payment under any incentive or reimbursement program, and the application of the standard, sales objective, or program by a manufacturer, distributor, or factory branch" unless such program is i) fair, reasonable, and equitable; ii) based on accurate information; and iii) includes considerations of the demographic characteristics and consumer preferences of the population in the dealer's assigned market area.

115.    Sales efficiency is a "performance standard, sales objective, or program for measuring dealership performance that may have a material effect on the dealer, including the dealer's right to a benefit or program under any incentive or reimbursement program" as those terms are used in Maryland Dealer Act § 15-207(e)(3)(i).

116.    Sales efficiency constitutes a sales performance metric that is unfair, unreasonable, inequitable, and does not consider all relevant and material local and regional criteria, data, and facts.

117.    Sales efficiency compares actual sales to the sales the Hyundai Defendants "expect" that particular dealer to make.

118.    Sales efficiency is an outdated and discredited sales performance metric that fails to account for local market conditions and consumer preferences other than segment popularity.

119.    Sales efficiency does not include all relevant and material criteria, data, or facts, and do not fairly compare Plaintiff to dealerships of comparable size in comparable markets.

120.     Establishment, implementation, and enforcement of the sales efficiency metric adversely affects Plaintiff by measuring its performance against an unreasonable and arbitrary standard.

121.     Plaintiff's failure to achieve the unreasonable objectives has put its franchise at risk of termination.

122.     Plaintiff is therefore entitled to a determination under Maryland Dealer Act § 15-207(e)(3)(ii) that sales efficiency is unlawful under Maryland law and that the Hyundai Defendants are prohibited from using sales efficiency to evaluate sales performance.

**SECOND CLAIM FOR RELIEF**
**(Violation of Md. Transp. Code § 15-207(e) against Hyundai – DPB 4.0)**

123.     Plaintiff incorporates paragraphs 1 to 112 by reference as though fully set forth herein.

124.     Under Maryland Dealer Act § 15-207(e)(3), manufacturers and distributors are  prohibited from establishing, implementing, or enforcing criteria for measuring "an assigned market area or a performance standard, sales objective, or program for measuring dealership performance that may have a material effect on a dealer, including the dealer's right to a benefit or payment under any incentive or reimbursement program, and the application of the standard, sales objective, or program by a manufacturer, distributor, or factory branch" unless such program is i) fair, reasonable, and equitable; ii) based on accurate information; and iii) includes considerations of the demographic characteristics and consumer preferences of the population in the dealer's assigned market area.

125.   DPB 4.0 is a "performance standard[s], sales objective[s], or program[s] for measuring dealership performance that may have a material effect on the dealer, including the dealer's right to a benefit or program under any incentive or reimbursement program" as those terms are used in Maryland Dealer Act § 15-207(e)(3)(i).

126.   DPB 4.0 is a sales performance criteria that is unfair, unreasonable, inequitable, and does not consider all relevant and material local and regional criteria, data, and facts.

127.   DPB 4.0 includes all of sales efficiency's flaws and adds the sales volume objective's additional flaws.

128.   Establishment, implementation, and enforcement of DBP 4.0 adversely affects Plaintiff, as they have put Plaintiff at risk of forfeiting significant wholesale price discounts under DPB 4.0.

129.   Maryland Dealer Act § 15-213 provides that any person who suffers a financial injury for any violation of Subtitle 2 may recover damages and reasonable attorneys' fees.

130.   Plaintiff is therefore entitled to a determination under Maryland Dealer Act § 15-207(e)(3)(ii) that DPB 4.0 is unlawful under Maryland law and damages caused by the Hyundai Defendants' withholding of wholesale price discounts tied to DPB 4.0.

### THIRD CLAIM FOR RELIEF
### (Violation of Md. Transp. Code § 15-207(e) against Genesis – RPB and Leadership Bonus)

131.   Plaintiff incorporates paragraphs 1 to 112 by reference as though fully set forth herein.

132.    Under Maryland Dealer Act § 15-207(e)(3), manufacturers and distributors are prohibited from establishing, implementing, or enforcing criteria for measuring "an assigned market area or a performance standard, sales objective, or program for measuring dealership performance that may have a material effect on a dealer, including the dealer's right to a benefit or payment under any incentive or reimbursement program, and the application of the standard, sales objective, or program by a manufacturer, distributor, or factory branch" unless such program is i) fair, reasonable, and equitable; ii) based on accurate information; and iii) includes considerations of the demographic characteristics and consumer preferences of the population in the dealer's assigned market area.

133.    RPB is a "performance standard[s], sales objective[s], or program[s] for measuring dealership performance that may have a material effect on the dealer, including the dealer's right to a benefit or program under any incentive or reimbursement program" as those terms are used in Maryland Dealer Act § 15-207(e)(3)(i).

134.    RPB is a sales performance criteria that is unfair, unreasonable, inequitable, and does not consider all relevant and material local and regional criteria, data, and facts.

135.    RPB objectives are determined using a nebulous, arbitrary method.

136.    RPB sales objectives do not include all relevant and material criteria, data, or facts, and do not fairly compare Plaintiff to dealerships of comparable size in comparable markets.

137.    RPB objectives do not accurately reflect the sales opportunities available to Plaintiff; rely on a percentage of growth that is arbitrarily established by Genesis; use averages that by definition impose unequal standards on dealers; fail to consider relevant

and material local criteria, data, and facts specific to the market served by Plaintiff; and fail to consider the performance of other motor vehicle dealers of comparable size to Plaintiff in comparable markets.

138.    Establishment, implementation, and enforcement of RPB adversely affects Plaintiff, as it has put Plaintiff at risk of forfeiting significant wholesale price discounts under RPB.

139.    Inheriting the flaws of RPB, the Leadership Bonus is a "performance standard[s], sales objective[s], or program[s] for measuring dealership performance that may have a material effect on the dealer, including the dealer's right to a benefit or program under any incentive or reimbursement program" as those terms are used in Maryland Dealer Act § 15-207(e)(3)(i).

140.    Because Leadership Bonus wholesale price discounts are contingent on meeting the RPB objective, the Leadership Bonus is a sales performance criteria that is unfair, unreasonable, inequitable, and one that does not consider all relevant and material local and regional criteria, data, and facts.

141.    The Leadership Bonus objective does not include all relevant and material criteria, data, or facts, and does not fairly compare Plaintiff to dealerships of comparable size in comparable markets.

142.    The Leadership Bonus does not accurately reflect the sales opportunities available to Plaintiff; relies on a percentage of growth that is arbitrarily established by Genesis; uses averages that by definition impose unequal standards on dealers; fails to consider relevant and material local criteria, data, and facts specific to the market served

by Plaintiff; and fails to consider the performance of other motor vehicle dealers of comparable size to Plaintiff in comparable markets.

143.    Establishment, implementation, and enforcement of the Leadership Bonus adversely affects Plaintiff, as it has put Plaintiff at risk of forfeiting significant wholesale price discounts.

144.    Maryland Dealer Act § 15-213 provides that any person who suffers a financial injury for any violation of Subtitle 2 may recover damages and reasonable attorneys' fees.

145.    Plaintiff is therefore entitled to a determination under Maryland Dealer Act § 15-207(e)(3)(ii) that the RPB and the Leadership Bonus are unlawful under Maryland law and damages caused by the Hyundai Defendants' withholding of wholesale price discounts tied to RPB.

**<u>FOURTH CLAIM FOR RELIEF</u>**
**(Violation of Md. Transp. Code § 15-212.1(c) against the Hyundai Defendants)**

146.    Plaintiff incorporates paragraphs 1 to 112 by reference as though fully set forth herein.

147.    Maryland Dealer Act § 15-212.1 ("Chargeback Statute") regulates manufacturer audits and chargebacks of incentives.

148.    Section 15-212.1(c)(1) of the Chargeback Statute states that if a dealer's incentive claim is shown by the manufacturer "to be false or unsubstantiated, the manufacturer…may charge back the claim within 6 months from the payment of the incentive or reimbursement."

149.    The Hyundai Defendants imposed chargeback penalties on Plaintiff for payments made more than six months before the issuance of the Audit Letters.

150.    The chargebacks exceeded the statutory period, otherwise known as a "lookback period," and violated the Chargeback Statute.

151.    Neither Hyundai nor Genesis has claimed that the incentive payments made to Plaintiff, and, specifically, sales related to independent commercial customer Kingsley & Co., were the result of fraud by Plaintiff.

152.    In any event, the sales to Kingsley & Co. are qualifying Retail Sales under the Sales Rules.

153.    The Hyundai Defendants therefore violated the Chargeback Statute by impermissibly charging back incentives Plaintiff properly claimed on sales to Kingsley & Co.

154.    Maryland Dealer Act § 15-213 provides that any person who suffers a financial injury for any violation of Subtitle 2 may recover damages and reasonable attorneys' fees.

155.    As a direct and proximate result of the conduct by the Hyundai Defendants, Plaintiff has been damaged in an amount to be determined at trial and exceeding $75,000.

**FIFTH CLAIM FOR RELIEF**
**(Violation of Md. Transp. Code § 15-206.1 against the Hyundai Defendants)**

156.    Plaintiff incorporates paragraphs 1 to 112 by reference as though fully set forth herein.

157.    Maryland Dealer Act § 15-206.1 imposes a duty of good faith on the Hyundai Defendants "(1) [i]n acting or purporting to act under the terms, provisions, or

conditions of any franchise agreement; or (2) [i]n in any transaction or conduct governed by this subtitle."

158.    As described herein, incentive payments and chargebacks are transactions or conduct governed by the Maryland Dealer Act.

159.    The Hyundai Defendants failed to act in good faith under Maryland Dealer Act Section § 15-206.1 by charging back hundreds of thousands of dollars in incentive payments that Plaintiff was rightfully entitled to receive.

160.    The Hyundai Defendants have also failed to act in good faith under Maryland Dealer Act § 15-206.1 by withholding wholesale price discounts and inventory based on Plaintiff's refusal to provide exclusive Hyundai and Genesis dealerships that comply with the Hyundai Defendants' unreasonable facility programs.

161.    Maryland Dealer Act § 15-213 provides that any person who suffers a financial injury for any violation of Subtitle 2 may recover damages and reasonable attorneys' fees.

162.    As a direct and proximate result of the conduct by the Hyundai Defendants, Plaintiff has been damaged in an amount to be determined at trial and exceeding $75,000.

### SIXTH CLAIM FOR RELIEF
**(Fraud as to Defendants Prather and DePaul)**

163.    Plaintiff incorporates paragraphs 1 to 112 by reference as though fully set forth herein.

164.    Plaintiff asserts this claim in the alternative, in the event Plaintiff's sales to Kingsley & Co. are not Retail Sales under the Sales Rules.

165.    Prior to the issuance of the Audit Letters, Prather and DePaul, respectively, made false statements to Plaintiff regarding the permissibility or validity of Plaintiff's sales to Kingsley & Co.

166.    Defendants Prather and DePaul knew when they made the statements to Plaintiff about the permissibility or validity of Plaintiff's continued motor vehicle sales to Kingsley & Co. that such statements were either false or were made with reckless indifference as to the truth of the statements.

167.    Defendants Prather and DePaul knew when they made the statements to Plaintiff about the permissibility or validity of Plaintiff's continued motor vehicle sales to Kingsley & Co. that such statements were made to induce Plaintiff into believing such sales complied with the Hyundai Defendants' Sales Rules.

168.    As Defendants Prather and DePaul were Regional District Sales Managers for Hyundai and Genesis respectively, Plaintiff rightfully relied on such statements by Prather and DePaul about Plaintiff's compliance with the Hyundai Defendants' Sales Rules.

169.    On information and belief, Defendants Prather and DePaul induced Plaintiff into making sales to Kingsley & Co. so they would receive recognition and additional compensation on account of those reported sales.

170.    On information and belief, Defendants Prather and DePaul did receive additional compensation based on the Plaintiff's reported sales to Kingsley & Co.

171.    As a direct and proximate result of the conduct by Prather and DePaul, Plaintiff suffered damages in an amount to be determined at trial and exceeding $75,000.

## SEVENTH CLAIM FOR RELIEF
### (Violation of Md. Transp. Code § 15-207(a), (b) and (d) against the Hyundai Defendants)

172.     Plaintiff incorporates paragraphs 1 to 112 by reference as though fully set forth herein.

173.     As described herein, the Hyundai Defendants have coerced and/or required Plaintiff, within the meaning of Maryland Dealer Act § 15-207(a), to make an agreement with the Hyundai Defendants to exclude Genesis from Plaintiff's facility and materially change the Plaintiff's facilities.

174.     This coercion has taken the form of withholding wholesale price discounts and discretionary inventory.

175.     The "requirements" are that Plaintiff excludes Genesis from its dealership facilities and materially change the facilities and method of conducting business by providing exclusive Hyundai and Genesis dealerships.

176.     This change would impose substantial financial hardship on Plaintiff's business, including costs associated with building exclusive, separate facilities and staffing.

177.     Maryland Dealer Act § 15-213 provides that any person who suffers a financial injury for any violation of Subtitle 2 may recover damages and reasonable attorneys' fees.

178.     As a direct and proximate result of the conduct by the Hyundai Defendants, Plaintiff has been damaged in an amount to be determined at trial and exceeding $75,000.

## EIGHTH CLAIM FOR RELIEF
### (Violation of Md. Transp. Code § 15-207(h) against the Hyundai Defendants)

179.     Plaintiff incorporates paragraphs 1 to 112 by reference as though fully set forth herein.

180.     As described herein, the Hyundai Defendants have violated Maryland Dealer Act § 15-207(h) by withholding wholesale price discounts and other benefits based on Plaintiff's failure to comply with facility requirements, exclusivity requirements, and performance standards.

181.     The Hyundai Defendants have also violated Maryland Dealer Act § 15-207(h) by requiring the Plaintiff to alter or replace its existing facility and denying, or threatening to deny, any benefit generally available to all dealers for a dealer's failure to alter or replace an existing dealership facility.

182.     Maryland Dealer Act § 15-213 provides that any person who suffers a financial injury for any violation of Subtitle 2 may recover damages and reasonable attorneys' fees.

183.     As a direct and proximate result of the conduct by the Hyundai Defendants, Plaintiff has been damaged in an amount to be determined at trial and exceeding $75,000.

### NINTH CLAIM FOR RELIEF
### (Violation of Md. Transp. Code § 15-207(i) against the Hyundai Defendants)

184.     Plaintiff incorporates paragraphs 1 to 112 by reference as though fully set forth herein.

185.     As described herein, the Hyundai Defendants have violated Maryland Dealer Act § 15-207(i) basing DPB 4.0 and RPB on an unreasonable performance standard and withholding rebates, cash incentives, or other promotion items for sale for vehicles from Stoler.

186.     The performance standard the Hyundai Defendants utilize is not reasonable considering all existing circumstances, including the availability of inventory, the Hyundai Defendants' coercive practices described above, and other flaws with the performance standard.

187.     Maryland Dealer Act § 15-213 provides that any person who suffers a financial injury for any violation of Subtitle 2 may recover damages and reasonable attorneys' fees.

188.     As a direct and proximate result of the conduct by the Hyundai Defendants, Plaintiff has been damaged in an amount to be determined at trial and exceeding $75,000.

**TENTH CLAIM FOR RELIEF**
**(Violation of Md. Transp. Code § 15-208 against the Hyundai Defendants)**

189.     Plaintiff incorporates paragraphs 1 to 112 by reference as though fully set forth herein.

190.     As described herein, the Hyundai Defendants have violated Maryland Dealer Act § 15-208 by withholding inventory from Plaintiff.

191.     Maryland Dealer Act § 15-213 provides that any person who suffers a financial injury for any violation of Subtitle 2 may recover damages and reasonable attorneys' fees.

192.     As a direct and proximate result of the conduct by the Hyundai Defendants, Plaintiff has been damaged in an amount to be determined at trial and exceeding $75,000.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

33

WHEREFORE, Plaintiff requests that this Court issue an order as follows:

1.      On the First Cause of Action, a determination by this Court that the sales efficiency metric is unlawful under Maryland law;

2.      On the Second Cause of Action, a determination by this Court that DPB 4.0 is unlawful under Maryland law and damages due in an amount to be proven at trial and exceeding $75,000;

3.      On the Third Cause of Action, a determination by this Court that RPB and the Leadership Bonus are unlawful under Maryland law and damages due in an amount to be proven at trial and exceeding $75,000;

4.      On the Fourth Cause of Action, damages due in an amount to be proven at trial and exceeding $75,000;

5.      On the Fifth Cause of Action, damages due in an amount to be proven at trial and exceeding $75,000;

6.      On the Sixth Cause of Action, damages due in an amount to be proven at trial and exceeding $75,000;

7.      On the Seventh Cause of Action, damages due in an amount to be proven at trial and exceeding $75,000;

8.      On the Eighth Cause of Action, damages due in an amount to be proven at trial and exceeding $75,000;

9.      On the Ninth Cause of Action, damages due in an amount to be proven at trial and exceeding $75,000;

10.     On the Tenth Cause of Action, damages due in an amount to be proven at trial and exceeding $75,000;

11.     Attorney's fees, as authorized under Maryland Dealer Act § 15-213;

12.     Prejudgment interest, costs, and disbursements; and

13.     Such other and further relief as the Court deems just and proper.


DATED:      June 27, 2023                    Respectfully submitted,

                                             By:  */s/ Laurel LaMontagne*
                                                 Laurel LaMontagne # 1412170133
                                                 **ARENTFOX SCHIFF LLP**
                                                 1717 K St NW
                                                 Washington, DC 20006
                                                 T: 202-857-6325
                                                 F: 202-857-6395

                                                 Charles A. Gallaer (*pro hac vice*
                                                 *forthcoming)*
                                                 **ARENTFOX SCHIFF LLP**
                                                 1301 Avenue of the Americas, Fl. 42
                                                 New York, NY 10019
                                                 Tel: 212-484-3900
                                                 Email:
                                                 laurel.lamontagne@arentfox.com
                                                 charles.gallaer@arentfox.com
                                                 *Attorneys for Plaintiff*